O

# United States District Court
# Central District of California

| | |
|---|---|
| LORENZO RIVERA, | Case No. 2:19-cv-05050-ODW(KSx) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO REMAND [12]** |
| MARRIOTT INTERNATIONAL, INC.; et al. | |
| Defendants. | |

## I. INTRODUCTION

On April 24, 2019, Plaintiff Lorenzo Rivera ("Rivera") filed this putative class action in Los Angeles Superior Court against Marriot International, Inc. ("MII"). (Notice of Removal ("Removal") Ex. A ("Compl."), ECF No. 1-1.) On June 10, 2019, MII removed the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (Removal 1, ECF No. 1.) Rivera now moves to remand this action for lack of subject matter jurisdiction. (Mot. to Remand ("Mot."), ECF No. 12.) For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Remand.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Rivera brings this class action against MII on behalf of himself and the putative class he seeks to represent (collectively the "Class"). The Class consists of "all non-exempt employees, including, but not limited to, dishwashers, cooks, runners, bartenders, servers, cashiers, other food and beverage staff, housekeeping staff, front desk staff, maintenance staff, and guest service representatives currently and/or formerly employed by Defendants [MII] during the Class Period." (Compl. ¶ 1.) Rivera is a citizen of California. (Removal ¶ 12.) MII is a Delaware corporation with its principal place of business in Maryland. (Removal ¶ 15.) Rivera alleges seven causes of action against MII: (1) Failure to Pay Wages (2) Failure to Provide Meal Periods (3) Failure to Authorize or Permit Rest Periods (4) Failure to Pay Wages Due at Separation of Employment (5) Failure to Provide Accurate Wage Statements and Failure to Issue and Maintain Records (6) Failure to Indemnify for Expenditures or Losses in Discharge of Duties (7) Unfair Business Practices. (Compl. ¶¶ 2, 33–87.)

On June 10, 2019, MII removed this action under CAFA alleging (1) the putative class is greater than 100 members; (2) diversity is satisfied; and (3) the amount in controversy is greater than $5 million. (Removal ¶¶ 11–28.) MII supports its Removal with a Declaration from Tiffany Schafer ("Schafer"), the Senior Area Director of Human Services at MII. (Decl. of Tiffany Schafer ("Schafer Decl.") ¶ 1, ECF No. 2.) Rivera moves to remand.

## III. LEGAL STANDARD

CAFA allows for federal jurisdiction over a purported class action when (1) the amount in controversy exceeds $5 million (2) at least one putative class member is a citizen of a state different from any defendant, and (3) the putative class exceeds 100 members. 28 U.S.C. §§ 1332(d)(2), (5). "[T]he burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Generally, removal statutes are strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566

(9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. If the plaintiff disputes the alleged amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88. The parties may submit evidence, "including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

## IV. DISCUSSION

MII claims that removal is proper because there are more than 100 putative class members, minimal diversity is satisfied, and the amount in controversy exceeds $5 million. (Removal ¶¶ 11–28.) MII asserts that the number of putative class members is 4,342 employees. (Removal ¶ 24.) MII further argues that the parties are minimally diverse because MII is a Delaware Corporation with its principal place of business in Maryland, while Rivera is a citizen of California. (Removal ¶¶ 12, 15.) Lastly, MII contends that the face of the Complaint easily demonstrates that the amount in controversy exceeds $5 million, and with over $3,112,662.50 in just attorney's fees. (Removal ¶¶ 18, 41.)

Rivera does not dispute that the class is over 100 members or that the parties are minimally diverse. (Mot. 4.) However, Rivera argues that MII fails to establish the amount in controversy because MII speculates a 100% violation rate. (Mot 2.) Rivera further asserts that MII's contention that the amount in controversy exceeds $5 million is inconsistent with its contention that it did not employ Rivera. (Mot. 6.) For the

reasons discussed below, the Court finds that MII has established that the amount in controversy is greater than $5 million.

### A. Employment of Mr. Rivera

Rivera asserts that MII's argument that the amount in controversy exceeds $5 million is inconsistent with its contention that it did not employ Rivera. (Mot. 6.) MII explains, and the Court concurs, that, despite its contention that Marriot Hotel Services, Inc. ("MHS") and not MII employed Rivera, the amount in controversy at issue is based on the putative class aggrieved by MII. (Opp'n 6.) Thus, the issue of Rivera's true employer is irrelevant on a motion to remand and MII may remove so long as it is plausible that the jurisdictional threshold is met. *Dart Cherokee*, 574 U.S. at 89. Accordingly, the Court **DENIES** the Motion on this basis.

### B. Determining the Violation Rate

"As seemingly is always the case in wage-and-hour lawsuits attempting to find their way to federal court, violation rates are key to the calculations necessary to reach the [$5 million] amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, No. 19-cv-5430-GW (JPRx), 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019). Hence, determining whether the amount in controversy exceeds $5 million is contingent upon whether Weiser's calculations of violation rates are reasonable. *See Ibarra*, 775 F.3d at 1197 (finding assumptions regarding damages "cannot be pulled from thin air but need some reasonable ground underlying them.") MII, as the removing party, bears the burden to establish that its asserted amount in controversy relies on reasonable assumptions. *Id.* at 1199.

"Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Dobbs v. Wood Group PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (*citing Ibarra*, 775 F.3d at 1199). "Generally, the spectrum of similar cases has two end-points: the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law

violations." *Id.* (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). For instance, it is reasonable to assume a 100% violation rate if the "complaint specifically alleges a 'uniform' practice" and the plaintiff offers no competent evidence in rebuttal to a defendant's showing. *Id.*

However, courts in the Ninth Circuit have found a general allegation of a uniform policy and systematic scheme of wage abuse does not always support a 100% violation rate. *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) (finding the defendant's inference of 100% violation rate based on a "uniform policy" reasonable in light of the plaintiff's failure to rebut the defendant's evidence supporting such rates.); *but see Vilitchai v. Ametek Programmable Power, Inc.*, No. 3: 15-CV-1957-L (BLM), 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017) (finding "[a]lthough Plaintiff alleges Defendants had a 'uniform policy and systematic scheme of wage abuse,' such allegations do not support a 100% violation rate") (citations omitted); *Beck v. Saint-Gobain Containers*, No. 2:16-cv-03638-CAS (SKx), 2016 WL 4769716, at *9 (C.D. Cal. Sept. 12, 2016) (finding that the defendant impermissibly assumed a 100% violation rate where the plaintiff asserted in his general allegations that the defendant "engaged in a uniform policy and systematic scheme of wage abuse").

Here, Rivera alleges regarding his first claim that "Defendants maintained a uniform practice of failing to pay [him and the putative class] all minimum and overtime wages for all hours worked. (Compl. ¶ 16.) Rivera further alleges regarding his third claim that he and the putative class "consistently worked over four (4) hours per shift with no rest breaks, due to Defendants' uniform practices." (Compl. ¶ 52.) Therefore, MII has supported the use of a 100% violation rate for claims one and three based on allegations in Rivera's complaint. Although MII uses a 100% violation rate to calculate the amount in controversy for claims without alleged uniform violations, even considering Rivera's first claim, MII supports an estimate that far exceeds $5 million amount in controversy. (Removal ¶¶ 29–38; Opp'n 14.)

Rivera alleges that he and the putative class members "regularly performed off-the-clock work due to [MII's] practice of requiring [Rivera and the putative class members] to put on their uniforms at the work location before clocking in for their shifts, and take off their uniforms at the work location after clocking out for their shifts." (Compl. ¶ 16.) MII asserts that the proposed class members at just one hotel worked approximately 704,058 shifts.[2] (Opp'n 14; Decl. of Tiffany Schafer in Supp. of Opp'n ¶ 4, ECF No. 14-1.) Assuming each employee was entitled to pay for an extra 30 minutes of unpaid minimum wage and overtime per shift, MII calculates the amount in controversy for just this one hotel would be $8,800,725–far exceeding the $5,000,000 requirement. (Opp'n 14.)

Given the size of the alleged class, the number of claims alleged in the complaint, and the potential for attorneys' fees, the Court determines that the amount in controversy requirement is satisfied. *See Blevins v. Republic Refrigeration, Inc.*, No. 15-cv-04019-MMM-(MRWx), 2015 WL 12516693, at *9 (C.D. Cal. Sept. 25, 2015) ("[C]ourts have been willing to credit the defendant's assertion that there was a 100% violation rate if the calculated amount in controversy is significantly higher than $5,000,000, or if a 100% frequency rate is assumed for some, but not all, violations"); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (stating that attorneys' fees must be included in the assessment of the amount in controversy). Accordingly, the Court **DENIES** the Motion.

---

[2] Rivera argues that Schafer's estimate of the class is over-inclusive; however, the Complaint describes the class broadly as "all non-exempt employees, including, but not limited to, dishwashers, cooks, runner, bartenders, servers, cashiers, other food and beverage staff, housekeeping staff, front desk staff, maintenance staff and guest service representatives currently and/or formerly employed by [MII]." (Reply in Supp. of Mot. ("Reply") 4, ECF No. 15; Compl. ¶ 1.) Based on this broad and inclusive class definition, MII reasonably bases its calculations on "all non-exempt employees" during the class period. (*See* Removal; *see* Decl. of Tiffany Schafer in Supp. of Opp'n ¶ 4.) Thus, the Court finds Rivera's argument unavailing.

# V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Rivera's Motion to Remand. (ECF No. 12.)

**IT IS SO ORDERED.**

December 4, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**