O

# United States District Court
# Central District of California

| | |
|---|---|
| LORENZO RIVERA, | Case № 2:19-cv-05050-ODW (KSx) |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT [85]** |
| MARRIOTT INTERNATIONAL, INC. et al., | |
| Defendants. | |

## I.      INTRODUCTION

Plaintiff Lorenzo Rivera brings this action seeking relief for alleged violations of the California Labor Code and Business and Professions Code by Defendant Marriott Hotel Services, Inc. on behalf of a putative class and under California's Private Attorneys General Act ("PAGA").   (Fourth Am. Compl. ("FAC"), ECF No. 83.)   The parties reached a settlement and, for a second time, Rivera moves without opposition for preliminary approval of the parties' Class and PAGA Settlement Agreement.   (Second Mot. Prelim. Approval Class Action and PAGA

Settlement ("Motion" or "Mot."), ECF No. 85-1.)   For the following reasons, the Court **DENIES** Rivera's Motion.[1]

## II.        PROCEDURAL BACKGROUND

On April 24, 2019, Rivera brought a putative class action against Defendant Marriott International, Inc. in Los Angeles Superior Court, asserting seven causes of action: (1) Failure to Pay All Wages; (2) Failure to Provide Meal Periods or Compensation in Lieu Thereof; (3) Failure to Provide Rest Periods or Compensation in Lieu Thereof; (4) Failure to Pay Wages of Terminated or Resigned Employees; (5) Failure to Issue Itemized Wage Statements and Maintain Records; (6) Indemnification for Expenditures or Losses in Discharge of Duties; and (7) Unfair/Unlawful Business Practices.   (*See* Notice of Removal, Ex. A ("Compl.") ¶¶ 33–87, ECF No. 1-1.)   Rivera alleges that Marriott operates hotels and employed him and the proposed class members.   (*Id.* ¶¶ 7–9, 15, 22.)   Rivera further alleges that Marriott failed to provide the proposed class members with various statutory benefits mandated by California's wage and hour laws.   (*Id.* ¶¶ 14–20.)

On June 10, 2019, Marriott removed this action to federal court.   (Notice of Removal.)   Rivera moved to remand this action to state court, and the Court denied that motion.   (Mot. Remand, ECF No. 12; Order Den. Mot. Remand, ECF No. 21.)

Between December 2019 and August 2021, Rivera amended his complaint three times, correcting the named Defendant to Marriott Hotel Services, Inc. ("Marriott") and adding an eighth cause of action for violation of PAGA.   (First Am. Compl., ECF No. 24; Second Am. Compl., ECF No. 31; Third Am. Compl. ("TAC"), ECF No. 43.) Rivera also narrowed the scope of the class allegations to the hotel location at which Rivera worked.   (*See generally* TAC.)

Then, on October 5, 2021, Rivera's counsel submitted a declaration stating that Rivera "wishes to proceed on an individual basis and representative basis pursuant to

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

PAGA." (Decl. Janelle Carney Re: Dismissal Class Allegations ¶ 4, ECF No. 45.) In that same declaration, Rivera "request[ed] that the Court allow the dismissal of [his] proposed class allegations without prejudice." (*Id.* ¶ 5.) The Court granted that request on November 1, 2021, dismissing all class allegations in this case. (Order Re: Dismissal Class Allegations, ECF No. 47.)

On January 11, 2022, the parties participated in private mediation conducted by the Honorable Ronald Prager (Ret.). (Decl. Janelle Carney ISO Mot. ("Carney Decl.")[2] ¶ 7, Ex. 1 ("Settlement Agreement" or "SA"), ECF No. 85-2.) On January 24, 2022, the parties filed a Notice of Settlement. (Notice Settlement, ECF No. 66.) On March 18, 2022, the parties stipulated to remanding this action to state court for the sole purpose of obtaining approval of the parties' settlement. (Stip. Remand, ECF No. 70.) The parties noted that, in the event that the state court denied settlement approval, they intended to again remove the action to this Court to continue litigating. (*Id.* at 1–2.) The Court denied that stipulation, indicating that the parties may either "stipulate to remand to state court with the intention of remaining there or, alternatively, . . . seek settlement approval in this Court." (Min. Order Den. Stip. Remand 1–2, ECF No. 71.)

On April 25, 2022, Rivera moved without opposition for preliminary approval of the parties' Class and PAGA Settlement Agreement. (First Mot. Prelim. Approval Class Action and PAGA Settlement, ECF No. 76-1.) The Court denied that motion because, pursuant to Rivera's prior request for dismissal, there were no underlying class allegations at issue. (Order Den. First Mot. Prelim. Approval Class Action and PAGA Settlement 3–4, ECF No. 78.) The Court reasoned that, "[a]bsent any class allegations, [it] cannot conditionally certify a class, nor can it preliminarily approve a class action settlement." (*Id.*)

---

[2] The Carney Declaration is unsigned. (Carney Decl. 24.) This alone is reason to deny Rivera's Motion. Rivera shall submit a signed declaration in support of any renewed motion for preliminary approval of the Settlement Agreement.

On October 25, 2022, the parties stipulated that Rivera be granted leave to file the Fourth Amended Complaint to assert the class allegations that the Court previously dismissed.  (First Stip. Re: FAC 1, ECF No. 79.)  However, as part of that same stipulation, the parties agreed that, in the event that the parties' settlement agreement does not become final, "the Fourth Amended Complaint shall be null and void and deemed dismissed, and the Third Amended Complaint shall be the operative pleading and Plaintiff's class allegations will be deemed dismissed." (*Id.* at 1.)  The Court denied the parties' request for a conditional order.  (Order Den. First Stip. Re: FAC, ECF No. 80.)

On November 8, 2022, the parties again stipulated that Rivera be granted leave to file the Fourth Amended Complaint to assert the class allegations that the Court previously dismissed.  (Second Stip. Re: FAC 1, ECF No. 81.)  In this stipulation, the parties omitted the above-stated provision allowing for the reinstatement of the Third Amended Complaint and dismissal of Rivera's class allegations.  (*Id.*)  The Court granted this stipulation.  (Order Granting Second Stip. Re: FAC, ECF No. 82.)

On November 9, 2022, Rivera filed the Fourth Amended Complaint, reinstating Rivera's class allegations.  (FAC.)  By way of the Fourth Amended Complaint, Rivera asserts eight causes of action on behalf of himself and similarly aggrieved employees: (1) Failure to Pay All Wages; (2) Failure to Provide Meal Periods or Compensation in Lieu Thereof; (3) Failure to Provide Rest Periods or Compensation in Lieu Thereof; (4) Failure to Pay Wages of Terminated or Resigned Employees; (5) Failure to Issue Itemized Wage Statements and Maintain Records; (6) Indemnification for Expenditures or Losses in Discharge of Duties; (7) Unfair/Unlawful Business Practices; and (8) Violation of PAGA.  (*Id.* ¶¶ 38–107.)

Now, having reinstated his previously dismissed class allegations, Rivera again seeks preliminary approval of the parties' Class and PAGA Settlement Agreement. (Mot.; *see generally* SA.)

### III.    SETTLEMENT TERMS

The proposed Settlement Agreement includes the following terms.

**A.    Relevant Definitions**

The parties identify a class and a PAGA group in the proposed Settlement Agreement.  (SA §§ 1.18, 1.20.)  The parties define the class as "all individuals who are or who have been employed by Defendant at the Marina del Rey Marriott hotel in California as hourly non-exempt employees during any portion of the Class Period" of April 24, 2015, through the date on which the Court issues the Preliminary Approval Order or through an earlier date pursuant to the Settlement Agreement's escalator clause ("Class").  (SA §§ 1.19, 1.20.)  There are approximately 375 potential Class members.  (Carney Decl. ¶ 2.)

The parties define the PAGA group as "all individuals who are or who have been employed by Defendant at the Marina del Rey Marriott hotel in California as hourly non-exempt employees during any portion of the PAGA Period" of April 24, 2018, through the date on which the Court issues the Preliminary Approval Order or through an earlier date pursuant to the Settlement Agreement's escalator clause ("PAGA Group").  (SA §§ 1.17, 1.18.)

**B.    Settlement Fund**

The Settlement Agreement provides for a Maximum Settlement Amount of $375,000, which is all-inclusive, encompassing the shares of all participating Class members, as well as other costs and expenses.  (SA §§ 1.8, 9.1.)  However, the Settlement Agreement also includes an escalator clause providing that, if the Court issues the Preliminary Approval Order more than 51,939 workweeks after April 24, 2015 (which would be 10% more workweeks than the parties estimated would be covered by the Settlement Agreement during mediation), "Defendant shall have the option of either (1) paying an additional $8 per each additional workweek over 51,939 in the Class Period into the Maximum Settlement Amount, or (2) ending the Class

Period before the total Workweeks worked by Class Members during the Class Period exceeds 51,939." (*Id.* § 10.)

The Settlement Administrator ("Administrator") will pay the following costs and expenses from the Maximum Settlement Amount:

- Attorneys' fees in the amount of $125,000;
- Litigation costs and expenses, not to exceed $20,000;
- Administrator's costs, not to exceed $25,000;
- Class Representative Enhancement of $7,500; and
- A payment of $11,250 to the California Labor Workforce Development Agency ("LWDA").

(*See* SA §§ 9.3, 9.4, 9.6, 9.7; *see also* Mot. 8.)   The Net Settlement Amount is the amount remaining after the above amounts have been deducted from the Maximum Settlement Amount.  (SA § 1.9.)

The payments to participating Class members will be calculated by multiplying each participating Class member's share of the total workweeks worked by all participating Class members by "the Net Settlement Amount less the PAGA Payment."[3]  (SA § 9.2.)  In addition, the payments to members of the PAGA Group will be calculated by multiplying each PAGA Group member's share of the total workweeks worked by all PAGA Group members by the portion of the PAGA Payment allocated to PAGA Group members ($3,750).  (SA § 9.4 (explaining that, of

---

[3] The Settlement Agreement defines "PAGA Payment" as "the payment made to the [LWDA] and PAGA Members for civil penalties pursuant to PAGA and the terms of [the Settlement Agreement]." (SA § 1.16.)  Additionally, the Settlement Agreement defines the "Net Settlement Amount" as "the Maximum Settlement Amount" minus certain costs and expenses, including "the portion of the PAGA Payment paid to the LWDA." (SA § 1.9.)  To calculate the payment for a participating Class member, the Settlement Agreement provides for multiplying a particular Class member's share of the total workweeks worked by all participating Class members by "the Net Settlement Amount less the PAGA Payment."  (SA § 9.2.)  Based on these provisions, the portion of the PAGA Payment paid to the LWDA would be subtracted twice from the Maximum Settlement Amount in calculating a participating Class member's payment.  The Court understands this to be an inadvertent error and requests that the parties clarify this point in any amended motion for preliminary approval.

the $15,000 PAGA Payment, $11,250 will be paid to the LWDA and $3,750 will be distributed to the PAGA Group members.)

Participating Class members and PAGA Group members may challenge the number of workweeks credited to them by timely submitting a dispute in writing to the Administrator.  (SA § 8.)  Under the Settlement Agreement, the Administrator will issue an IRS Form 1099 to each participating Class member and PAGA Group member, who will each be responsible for paying any taxes.  (SA § 12.1.)

The Settlement Agreement also addresses how unclaimed funds will be handled.  (SA § 7.5.)  If a settlement check remains uncashed after 180 days, the unclaimed funds will be transmitted to the State Controller's Unclaimed Property Fund in the name of the Class member for whom they were intended.  (*Id.*)

## C.  Notice to Settlement Class

The Settlement Agreement provides for the appointment of ILYM Group, Inc. as the Administrator, responsible for providing notice to all potential Class members, among other things.  (SA § 1.2; Mot. 9.)  After Preliminary Approval, Marriott will provide the Administrator with the identities of the Class members and relevant Class data:  name, last-known mailing address, Social Security number, dates of employment, and number of workweeks and PAGA workweeks.  (SA § 7.2.)  The identities of the Class members and Class data will not be shared with Class counsel unless a Class member makes such a request with regards to their information.  (*Id.*) The Settlement Agreement details the Administrator's methods and timing for updating addresses, mailing the Class Notice, and managing mail returned as undeliverable.  (*Id.*)

The parties' proposed Class Notice defines the Class, explains the nature of the action, and informs potential Class members that they do not need to do anything to participate in the settlement and receive a settlement award.  (SA Ex. 1 ("Class Notice") 1–4, ECF No. 85-2.)  It describes the Maximum Settlement Amount and the included costs and expenses.  (*Id.* at 2.)  The Class Notice also informs Class members

how they may object to the settlement, dispute the number of workweeks attributed to them, or request exclusion from the Class in writing.  (Class Notice 4–5.)  It will also provide the deadlines for doing so.  (*Id.*; *see also* SA § 7.2 (providing that Class members will have 45 days from the mailing of the Class Notice to submit a request for exclusion, dispute, or objection).)  In addition, the Settlement Agreement informs Class members of the effect of participating in the settlement on their rights to bring certain claims against Marriott.  (Class Notice 5–6.)  Finally, the Class Notice provides contact information for Class counsel and the Administrator in the event that Class members need more information or have any questions.  (*Id.* at 6.)

**D.  Released Claims**

The Settlement Agreement and Class Notice define the claims that each participating Class member, PAGA Group member, and Rivera will release through the settlement.  (SA § 6; Class Notice 5–6.)  Participating Class members will release all claims "arising from or related to the facts and claims alleged in the Action, or that could have been raised in the Action based on the facts and claims alleged . . . ."  (SA § 6.1; Class Notice 5–6.)

**E.  Additional Terms**

Should more than five percent of potential Class members request exclusion, Marriott may cancel and void the Settlement.  (SA § 7.7.)  As discussed previously, as part of the Settlement Agreement, the parties agreed to stipulate to remand the case to the Superior Court of California solely for the purposes of seeking and obtaining court approval of the Settlement Agreement.  (SA § 13.4.)  After the Court denied the parties' stipulation to remand the case for purposes of settlement only, (Min. Order Den. Stip. 1–2), the parties executed an addendum to the Settlement Agreement, which strikes Section 13.4 regarding remand and adds Section 14.17 regarding Rivera's filing of a Fourth Amended Complaint with class claims.  (SA Ex. 2 ("Addendum to Settlement Agreement"), ECF No. 85-2.)

# IV.      ANALYSIS

The Court must consider whether the Class may be provisionally certified for settlement purposes only, evaluate the fairness, adequacy, and reasonableness of the proposed settlement, and review the adequacy of the proposed Class Notice.

## A.      Class Certification

Class certification is a prerequisite to preliminary settlement approval.  Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997).  Under Rule 23(a), the plaintiff must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Next, the proposed Class must meet at least one of the requirements of Rule 23(b).  Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention."  *Amchem*, 521 U.S. at 620.

### 1.      *Rule 23(a) Requirements*

The Court finds that the proposed Class meets all four Rule 23(a) requirements. First, the proposed Class is sufficiently numerous.  While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).  Here, the Class contains approximately 375 members.  (Carney Decl. ¶ 2.) Thus, the Class is sufficiently numerous.

1    Next, the claims of the potential Class members demonstrate common questions
2  of fact and law.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.
3  2012) ("[C]ommonality only requires a single significant question of law or fact."),
4  *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*
5  *Foods LLC*, 31 F.4th 651 (9th Cir. 2022).   Here, Rivera asserts all potential Class
6  members were subject to Marriott's pay policies.   (Mot. 12–13.)   Thus, common
7  questions among the Class members include whether Marriott failed to pay regular
8  wages, minimum wages, overtime double time, or any other type of wage; failed to
9  provide meal or rest periods or compensation in lieu thereof; failed to issue accurate
10 itemized wage statements; and failed to timely pay wages to separated/terminated
11 employees.  (*Id.* at 12.)   At this juncture, no discernable individualized issues appear
12 to exist which might detract from the common questions of fact and law for the Class.
13 As such, the Class meets the commonality requirement.

14    Rivera also meets the typicality requirement.   Typicality in this context means
15 that the representative claims are "reasonably co-extensive with those of absent class
16 members; they need not be substantially identical."   *Hanlon v. Chrysler Corp.*,
17 150 F.3d 1011, 1020 (9th Cir. 1998).   Here, Rivera's claims arise out of the same
18 circumstances as those of the other Class members.   (*See generally* FAC; Mot. 13.)
19 Rivera asserts that, like the potential Class members, he worked for Marriott in
20 California as an hourly, non-exempt employee during the Class Period.   (Mot. 13.)
21 Rivera further asserts that Marriott's uniform pay, meal, and rest policies applied to
22 him, as well as all hourly employees.   (*Id.*)   Thus, Rivera's claims share material
23 common factual and legal issues with those of the potential Class, satisfying
24 typicality.

25    Finally, Rivera and his counsel satisfy the adequacy requirement for
26 representing absent Class members.   This requirement is met where the named
27 plaintiff and their counsel do not have conflicts of interest with other class members
28 and will vigorously prosecute the interests of the class.   *Hanlon*, 150 F.3d at 1020.

Rivera asserts that he has "no claim that [is] antagonistic to the class." (Decl. Lorenzo Rivera ISO Mot. ("Rivera Decl.") ¶ 10, ECF No. 85-4.)   In addition, Rivera was involved in the negotiations to settle this action. (*Id.* ¶ 7.)  Counsel also appears well-qualified and experienced with wage-and-hour class action litigation. (Carney Decl. ¶¶ 3–4.)  In this action, counsel has engaged in investigation, discovery, analysis, and mediation on behalf of the Class. (*Id.* ¶¶ 5–7.)  These facts support Rivera's and counsel's adequacy and vigorous representation of the putative Class.

For the foregoing reasons, the proposed Class and their representatives satisfy the Rule 23(a) requirements.

### 2. *Rule 23(b)(3) Requirements*

The Court finds that the proposed Class meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As to the proposed Class, questions of law or fact common to Class members predominate over individualized questions because the issues at stake—*e.g.*, whether Marriott's uniform employment practices deprived Class members of overtime, meal and rest periods, and accurate itemized wage statements—are common to the Class.

Further, a class action appears to be a far superior method of adjudicating the Class members' claims.  The overarching claim that Marriott had uniform and systematic employment policies applicable to non-exempt employees applies to all potential Class members and makes individual actions prone to inefficiency.  The Class includes approximately 375 Class members. (Carney Decl. ¶ 2.)  Individual pursuit of these actions would be inefficient.  Were each potential Class member to go it alone, the costs of litigation for each plaintiff would dwarf any recovery.  Accordingly, the Class meets the requirements of Rule 23(b)(3).

Because each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) is met, the Class may be provisionally certified for settlement purposes.

**B.     Fairness of Settlement Terms**

Next, the Court must consider whether the proposed settlement warrants preliminary approval.  For preliminary approval, "the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks and alterations omitted).  A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.

**1.     Adequacy of Negotiations**

The Court considers whether the settlement was the product of "serious, informed, non-collusive negotiations."  *Spann*, 314 F.R.D. at 319.  Here, the parties investigated their claims and defenses before completing a full day of mediation with the Honorable Ronald Prager (Ret.), whom the parties regard as an experienced mediator.  (Mot. 3, 7, 10.)  Although the parties were unable to settle the case on the day of the mediation, the parties resolved the case thereafter with the help of the mediator's proposal.  (*Id.* at 7.)  The parties contend that they reached the Settlement Agreement after approximately 2.5 years of litigation, extensive factual and legal research, formal discovery including propounding and responding to written interrogatories, and the production of documents.  (*Id.*)

In light of the above, Rivera argues that "there is a presumption that the negotiations were conducted in good faith" and without fraud or collusion unless evidence to the contrary is offered. (*Id.* at 6.)   However, the Court finds that the parties' treatment of the class claims throughout this matter has been questionable, including at the settlement stage.

First, Rivera requested that the Court dismiss all of the proposed class allegations without prejudice, which the Court did.  (*See* Decl. Janelle Carney Re: Dismissal Class Allegations ¶ 4; Order Re: Dismissal Class Allegations.)   Then, despite no live class claims remaining at issue in this case, the parties reached a settlement agreement purportedly on a class-wide basis.  (First Mot. Prelim. Approval Class Action and PAGA Settlement.)   After the Court denied Rivera's motion for preliminary approval of that settlement agreement because there were no underlying class allegations at issue, the parties stipulated that Rivera be granted leave to re-assert class allegations for the purposes of settlement only.  (First Stip. Re: FAC 1 (agreeing that, if the parties' settlement agreement did not become final, "the Fourth Amended Complaint shall be null and void and deemed dismissed, and the Third Amended Complaint shall be the operative pleading and Plaintiff's class allegations will be deemed dismissed").)   After The Court denied the parties' request for a conditional order, (Order Den. First Stip. Re: FAC), and the parties again stipulated that Rivera be granted leave to file an amended complaint asserting the previously dismissed class allegations, which the Court granted.  (Order Granting Second Stip. Re: FAC.)  Rivera now seeks preliminary approval of the Settlement Agreement, which covers both the class and PAGA claims in this matter.  (Mot.)

Thus far, the parties offer no explanation for the agreement to settle class claims where no class allegations were at issue.  Likewise, the parties fail to explain why they would agree to the reinstatement of Rivera's class allegations for the purposes of settlement only.  The parties further fail to explain why they agreed to remand the case for settlement purposes only and to remove the case back to federal court in the event

that the state court did not approve the parties' settlement agreement. These contradictory actions by the parties are indicative of collusion. Absent any explanation, the Court is not satisfied that the settlement was the product of "serious, informed, non-collusive negotiations." *Spann*, 314 F.R.D. at 319

### 2. Settlement Terms

After carefully reviewing the terms of the Settlement Agreement, the Court finds that it does not unfairly give preferential treatment to any party and falls within the range of possible approval.

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

Here, as with most class actions, there is risk to both parties in continuing towards trial. The parties reached settlement only with the help of a mediator and after thoroughly evaluating the strengths and risks to both sides. (SA §§ 2.2–2.4.) The settlement treats all members of the Class equally, awarding shares based on number of workweeks. Accordingly, the Settlement Agreement does not unfairly favor any member, represents a compromise, and avoids uncertainty for all parties involved.

### 3.    Settlement Funds

With the possible exception of the PAGA allocation, the Court notes no obvious deficiencies in the amount and allocations of settlement funds, discussed below. However, the Court finds the upward departures in both the requested Class representative service award and Class counsel fees unsupported on the record presently before the Court, though within the range of possible approval.

### a.    PAGA Allocation

Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 578 (2010) (quoting *Arias v. Superior Court*, 46 Cal. 4th 969, 980–81 (2009)). PAGA provides that a plaintiff may seek penalties of one hundred dollars ($100) per aggrieved employee, per pay period, for an initial Labor Code violation, and two hundred dollars ($200) for each subsequent violation per aggrieved employee, per pay period. Cal. Lab. Code § 2699(f)(2).

"[I]n evaluating the adequacy of a settlement of a PAGA claim, courts may employ a sliding scale, taking into account the value of the settlement as a whole." *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (discussing that courts nonetheless should be "mindful of the need to safeguard the statutory purposes of PAGA and to ensure that the parties do not use a PAGA claim as a mere bargaining chip"). "[W]here a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself." *Id.*; *cf. O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016) (finding the proposed PAGA settlement allocation unjustified, either on its own or in light of the overall settlement terms).

The Settlement Agreement allocates $15,000 for a PAGA Payment out of the Maximum Settlement Amount. (SA § 9.4.) This is only four percent of the

Maximum Settlement Amount.   Rivera offers no support for the low PAGA allocation.   While their PAGA claim is premised on their labor violation claims, and thus similarly subject to the attendant risks, Rivera addresses these risks in only conclusory terms.   Nonetheless, it is plausible that the strengths and weaknesses of Rivera's claims may warrant such a reduction in the PAGA allocation, and the Court cannot find that the PAGA allocation is outside the range of possible approval at this time.

Accordingly, although the Court is highly skeptical of the proposed PAGA allocation, the question at preliminary approval is whether the settlement falls within the range of possible approval.   At this time, the Court finds that it may, but emphasizes that final approval is dependent on the parties' adequate showing in support of the low PAGA allocation.

> **b.**   *Service Award*

The Settlement Agreement provides that Rivera will seek approval of a Class representative payment of up to $7,500.   (SA § 9.3.)   "[D]istrict courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representatives."   *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).   In evaluating such awards, courts should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."   *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)).   "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."   *Bravo v. Gale Triangle, Inc.*, No. 2:16-cv-03347-BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (citing *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

Rivera submits a declaration stating that he participated in the settlement negotiations in this matter.   (Rivera Decl. ¶ 7.)   However, Rivera does not otherwise

appear to address his participation in this case.  This record does not support the requested upward departure of the Class representative payment.  At the preliminary approval stage, the question is whether the requested award falls within the range of possible approval.  At this time, the Court finds that it may, though final approval will depend on adequate support for the requested award.

c.   *Attorneys' Fees*

The Settlement Agreement provides that Class counsel may seek attorneys' fees of up to one-third, or $125,000, of the Maximum Settlement Amount.  (SA § 9.6.) "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Twenty-five percent recovery is the benchmark for attorneys' fees, although courts in the Ninth Circuit have found upward departures to fall within the acceptable range.  *See id.* at 942 (noting 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (upward departure acceptable when expressly explained).  Further, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *In re Bluetooth*, 654 F.3d at 942.

Counsel is experienced in wage-and-hour class action litigation and the fee request, while high, falls within the range identified as potentially acceptable in the Ninth Circuit.  Accordingly, preliminary approval is appropriate, though the final approval will depend on counsel providing adequate support for the requested award.

**4.   Release of Claims**

"Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability."  *Spann*, 314 F.R.D. at 327.  This is because "[a] settlement agreement may preclude a party from bringing a related claim

in the future even though the claim was not presented and might not have been presentable in the class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (internal quotation marks omitted)).  However, this is only true "where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Id.*

The Settlement Agreement indicates a release of all claims brought or that could have been brought based on the factual predicate in the action.  (SA § 6.)  The proposed Class is limited to individuals employed by Marriott at a particular hotel located in California during the Class Period.  (SA § 1.20.)  Moreover, Rivera's claims arise solely under California law.  (*See generally* FAC.)  Thus, the released claims are appropriately limited to the factual predicate of this action.

## C.   Sufficiency of Notice

To find notice to absent class members sufficient, the Court must analyze both the type and content of the notice.  After reviewing the Class Notice, the Court finds the type and content of notice to be insufficient.

### 1.   *Type of Notice*

"[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Here, Marriott will provide the Administrator with the contact information of all potential Class members and the Administrator will then distribute the Class Notice via mail and update the addresses where appropriate.  (SA § 7.2.)  The Administrator will update addresses for any mail returned as undeliverable using forwarding addresses, if provided, or using reasonable trace and updating methods, and re-mail notices using the updated information.  (*Id.*)  Beyond the notice itself, potential Class members may

also request more information from Class counsel via email and telephone.  (Class Notice 6.)

In addition to the procedures outlined above, the Court directs the parties to consider whether it would be appropriate based on the demographics of the proposed Class to provide translations of the Class Notice in any other languages in addition to English.  This may not be necessary, but the parties have not indicated one way or the other.  The Court also directs the parties to consider whether it would be appropriate to make key case documents available to potential Class members at a neutral website or through other means (*e.g.*, the complaint, answer, Settlement Agreement).  As it stands, the Class Notice states that Class members "can find a copy of the Settlement Agreement attached as Exhibit 1 to the Declaration of Janelle Carney in Support of Plaintiff's Motion for Preliminary Approval of Class Settlement . . . at the United States District Court – Central District of California."  (*Id.*)  The Class Notice then provides the physical address for the courthouse.  (*Id.*)  However, without further direction, it is not clear how Class members would actually access and review the Settlement Agreement.  Until the parties address these concerns, the Court cannot find the proposed type of notice to be sufficient.

### 2.    *Content of Notice*

Class notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).  The notice

"does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Here, the Court finds that the Class Notice contains much of the information required under Rule 23.  For example, the Class Notice includes the basics of the case, the Class definition, and the claims.  (Class Notice 1–2.)  It explains the terms of the settlement and that Class members do not need to do anything to participate and receive an award.  (*Id.* at 2–4.)  It describes the procedures for and will include the deadlines for requesting exclusion, challenging a Class member's workweeks, and objecting to the settlement.  (*Id.* at 4–5.)  The Class Notice informs potential Class members that remaining a member of the Class and receiving a payment will result in the Class member giving up their claims and being bound by the settlement.  (*Id.* at 5–6.)

Nevertheless, the Court has some concerns with the Class Notice.  First, the Class Notice does not inform Class members that they may enter an appearance through an attorney if they so desire.  Fed. R. Civ. P. 23(c)(2)(B)(iv).  In addition, the Class Notice states that "[t]he Settlement Class is comprised of all persons employed by Marriott Hotel Services, Inc., who worked in an hourly, non-exempt position at the Marina Del Rey Marriott hotel . . . in the State of California between April 24, 2015 and [DATE]."  (Class Notice 1.)  However, the Class Notice does not explain to Class members which positions are "exempt."  This information would be helpful to Class members seeking to understand the Class definition.  Likewise, the Class Notice refers to "PAGA Member[s]," but does not explain what that means.  (*See id.* at 4.)  Further, the Class Notice provides that it is the Class members' "responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of [their] payment under the Settlement," but does not include instructions for how a Class member should do so.  (*See id.* at 3.)  Finally, all too often class notices are discarded by proposed class members because the notice cannot be quickly distinguished from

unsolicited "junk mail."  To avoid such an outcome, all postal notices sent to the proposed Class members here shall bear a distinguishing mark (*i.e.*, Marriott's logo or insignia) to ensure that the Class members do not discard the Class Notice as unsolicited mail.

Accordingly, the Court finds the proposed Class Notice insufficient under the circumstances.

## V.    CONCLUSION

Based on the current record and absent any explanation for the parties' treatment of the class claims throughout this matter, the Court cannot find that the settlement was the product of "serious, informed, non-collusive negotiations."  *Spann*, 314 F.R.D. at 319.  The Court also finds the proposed Class Notice insufficient and directs the parties to amend the notice to address the Court's concerns.

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement **WITHOUT PREJUDICE** and **WITH LEAVE TO REFILE within 30 days** of the date of this Order.  (ECF No. 85.)


**IT IS SO ORDERED.**


June 1, 2023


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**