O

# United States District Court
# Central District of California

| | |
|---|---|
| LORENZO RIVERA,<br><br>                           Plaintiff,<br><br>    v.<br><br>MARRIOTT INTERNATIONAL, INC.,<br><br>                          Defendant. | Case No. 2:19-cv-05050-ODW (KSx)<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH MODIFICATIONS** |

## I.    INTRODUCTION

Plaintiff Lorenzo Rivera brings this putative class action suit against Defendant Marriott Hotel Services, Inc. ("Marriott") alleging violations of the California Labor Code and Business and Professions Code. (Fourth Am. Compl. ("FoAC"), ECF No. 84.) The parties reached a settlement agreement, and Rivera now moves for final approval. (Mot. Final Approval Class Action and PAGA Settlement ("Motion" or "Mot."), ECF No. 97.) The Motion is unopposed. For the reasons discussed below, the Court **GRANTS** the Motion with modifications to Attorneys' Fees.

## II. BACKGROUND

On April 24, 2019, Rivera brought a putative class action against Marriott in Los Angeles County Superior Court, asserting seven causes of action: (1) failure to pay all wages; (2) failure to provide meal periods or compensation in lieu thereof; (3) failure to provide rest periods or compensation in lieu thereof; (4) failure to pay wages of terminated or resigned employees; (5) failure to issue itemized wage statements and maintain records; (6) indemnification for expenditures or losses in discharge of duties; and (7) unfair/unlawful business practices. (*See* Notice of Removal ("NOR") Ex. A ("Compl.") ¶¶ 33–87, ECF No. 1-1.) Rivera alleges that Marriott operates hotels and employed him and the proposed class members. (*Id.* ¶¶ 7–9, 15, 22.) Rivera further alleges that Marriott failed to provide the proposed class members with various statutory benefits mandated by California's wage and hour laws. (*Id.* ¶¶ 14–20.)

On June 10, 2019, Marriott removed this action to federal court. (*See* NOR, ECF No. 1.) Between December 2019 and August 2021, Rivera amended his complaint three times. (First Am. Compl., ECF No. 24; Second Am. Compl., ECF No. 31; TAC"), ECF No. 43.) With these amendments, Rivera corrected the named Defendant to Marriott Hotel Services, Inc., added an eighth cause of action for violation of PAGA, and narrowed the scope of the class allegations to the hotel location at which Rivera worked.

After holding a conference with the parties in chambers, off the record, the Court found preliminary approval of the parties' settlement appropriate. (Min. Order Granting Third Mot. Prelim. Approval Class Action and PAGA Settlement, ECF No. 95.) The Court explained that preliminary approval was based on the combination of the parties reassuring the Court that the settlement was a product of "non-collusive negotiations," as well as the parties' agreeing to use a model form of class notice envelope developed by the Federal Judicial Center ("FJC"). (*Id.* at 2.)

Rivera now moves for final approval of the settlement. (Mot. Final Approval

Class Action and PAGA Settlement ("Motion" or "Mot."), ECF No. 97.) The Motion is unopposed. The hearing for final approval was initially calendared for February 26, 2024, but was continued because Marriott "need[ed] additional time to submit the required Class Action Fairness Act ("CAFA") notices" to the necessary Attorneys General.[1] (Stip. Cont. Hr'g, ECF No. 98.) The Court nevertheless elected to hold a zoom hearing on February 26, 2024. (Min. Order Confirming February 26, 2024 Hr'g, ECF No 99.)

On February 26, 2024, the Court held a Zoom hearing for two reasons: (1) to give class members, who already received notice of the final class settlement hearing, an opportunity to voice their objections if any to the proposed settlement agreement; and (2) check on the status of Marriott's CAFA required notices to the United States Attorney General and all appropriate State Attorneys General. There were no class member appearances or objections during the hearing. Additionally, Marriott notified the Court that the required CAFA notices were served on the relevant Attorneys General on February 2, 2024. Following the hearing, the Court scheduled an in-person hearing to resolve the final settlement approval on May 6, 2024.[2] (Mins., ECF No. 100.)

### III.   SETTLEMENT TERMS

The key provisions of the parties' Settlement Agreement are set forth below. (See Third Mot. Prelim. Approval Class Action and PAGA Settlement, ECF No. 88-1; Janelle Carney Decl. ISO Prelim. Approval Ex. 1 ("Settlement Agreement"), ECF No. 88-2.)

---

[1] Under the Class Action Fairness Act of 2005 ("CAFA"), "after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement." 28 U.S.C. § 1715(b).

[2] The CAFA's 90 day notice requirement under 28 U.S.C. § 1715(d) was satisfied by the May 6, 2024 hearing date. See 28 U.S.C. § 1715(d) ("[A judicial] order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).").

### A. Proposed Class

The Settlement Agreement defines the proposed class as: "all individuals who are or who have been employed by Defendant at the Marina del Rey Marriott hotel in California as hourly non-exempt employees during any portion" of the class period. (Settlement Agreement § 1.18.) The class period is defined as April 24, 2018, through the date of issue on the Preliminary Approval Order, August 20, 2023. (*Id.* § 1.19.) There are 499 identified Settlement Class members who were noticed regarding the May 6, 2024 hearing. (See Nick Castro Decl. ISO Mot., ECF No. 101.)

### B. Settlement Fund

Marriott will pay $436,560.00 into a non-reversionary Settlement Fund, exceeding the originally agreed-upon settlement amount of $375,000.00. (Mot. 2–3.) The $61,560.00 increase is a result of additional workweeks accrued during the period between executing the settlement agreement and the date when preliminary approval was granted by the Court. (*Id.* at 2.)

The Settlement Fund includes Attorneys' Fees of $125,000.00 or 33.33% of the original $375,000.00 settlement amount, litigation cost reimbursement of $12,147.84, a Class Representative service payment of $7,500.00 for Rivera, a payment of $11,250.00 to the California Labor and Workforce Development Agency ("LWDA") pursuant to PAGA, and $11,000 of settlement administrative fees paid to ILYM Group, Inc. (Settlement Agreement § 9.1–9.7; Decl. of Janelle Carney ISO Mot. ("Second Carney Decl.") ¶ 6, ECF No. 97-2.) The remainder of the Settlement Fund, the "Net Settlement Fund," will be distributed to the Class Members as settlement shares (ranging from $517.15 to $1,843.15). (Settlement Agreement § 9.2; Mot. 2.)

If any amount of the Settlement Fund remains in the distribution account after 180 days following the initial distribution of checks to Settlement Class Members, the distribution account will divest all remaining capital to the Controller

of the State of California. (Mot. 5.) The uncashed Net Settlement Fund will be held pursuant to the Unclaimed Property Law, Cal. Civ. Code section 1500 *et seq.*, for the benefit of the Class Members who did not cash their checks. (*Id.*) The parties agree that this "disposition" results in "no 'unpaid residue' under Cal. Civ. [Proc.] Code section 384." (*Id.*)

### C. Releases

Upon the effective date and issuance of the Final Approval Order, all Class Members agree to fully and finally:

> [R]elease and discharge Defendant . . . and any individual or entity which could be jointly liable with Defendant (collectively, the "Released Parties"), from the Released Claims. For purposes of this [Settlement] Agreement, the "Released Claims" are defined as any and all claims, debts, liabilities, demands, actions, or causes of action under state or the equivalent federal law, alleged in the Action[.]

(Settlement Agreement § 6.1.) Further, the Settlement Agreement provides that Settlement Class Members waive and relinquish the right to bring claims under the California Labor Code, California Private Attorneys General Act of 2004 ("PAGA"), California Business and Professions Code, as well as claims for any civil penalties. (*Id.*) Additionally, all Class Members who endorse their settlement checks waive and release any claims under the Fair Labor Standards Act, 29 U.S.C. § 201, that could have arisen during the Class Period. (*Id.*) Furthermore, Class Members agree to a General Release of all claims except those claims that "the creditor or releasing party does not know or suspect," that if known, "would have materially affected his or her settlement with the debtor or released party." (*Id.* § 6.2.)

### D. Notice and Response

The notice explains (1) the amount and makeup of the Settlement Fund; (2) the plan of allocation; (3) that Plaintiff's counsel and Plaintiff will apply for attorney fees, costs, and a service award, and (4) each class member's option to participate, opt out, or object to the settlement. (Carney Decl. Ex. 7 ("Notice"),

ECF No. 88-2.) The Notice adequately describes the litigation and the scope of the involved class.

The Notice was sent to class members pursuant to the Settlement Agreement and the method approved by the Court. (Mot. 3.) Each Class Member's name, mailing address, SSN, and number of workweeks applicable during the Class Period was provided by Marriott to the Third-Party Notice provider ("ILYM"). (*Id.*) On October 25, 2023, ILYM distributed the Court-approved Notice to those class members via United States Postal Service ("USPS") first class mail. On March 22, 2024, in preparation for the May 6, 2024 hearing, ILYM again renotified the Class via USPS first class mail. (Castro Decl. ¶ 4.) There have been no Class objections or opt-outs to the settlement thus far. (Mot. 5.)

Plaintiff now moves for final approval of the class action settlement.

### IV.   ANALYSIS

#### A. Class Certification

For the purposes of the Settlement Agreement only, the parties agree to certify the Class to include all Class Members. The Court has not previously ruled on the matter. Nothing has changed over the course of these settlement proceedings that would warrant the Court to deny class certification. Accordingly, the Court approves class certification.

#### B.   Fairness of Settlement Terms

In its Order granting preliminary approval, the Court found that the settlement terms fell within the range of possible approval. (Min. Order Granting Third Mot. Prelim. Approval Class Action and PAGA Settlement.) The Court must now consider whether the settlement terms are fair, reasonable, and adequate.

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," this Court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The settlement is appropriate when analyzing these factors.

### 1. Strengths of Plaintiff's Case

The first factor considers Rivera's likelihood of success on the merits and the range of possibly recovery. *Rodriguez*, 563 F.3d at 964–65. Plaintiff asserts that due to the several published conflicting decisions in "wage and hour" cases, the current legal landscape creates many uncertainties. (Mot. 8.) However, Rivera does not cite to any cases to support this claim. This weighs against favoring final approval as all litigation involves some degree of legal uncertainty. Nevertheless, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Therefore, this factor—albeit slightly—weighs in favor of granting final approval of the settlement.

### 2. Risk/Expense of Litigation & Status of Proceedings

Without settlement, Plaintiffs would be required to successfully move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal. *Rodriguez*, 563 F.3d at 966 (discussing that the risks inherent to obtaining and maintaining class certification, defeating summary judgment, prevailing at trial, and withstanding possible appeals weigh in favor of settlement). The parties engaged in informal discovery and multiple avenues of motion practice (MSJs, dropping causes of action, adding causes of action, etc.). Without settlement, the cost of continuing to litigate this class action would be great due to the costs associated with formal discovery, litigating

additional dispositive motions, and a motion for class certification. This factor therefore weighs in favor of approving the settlement.

### 3. Risk of Maintaining Class Action Status

This factor considers "the risk of maintaining class action status throughout the trial." *Rodriguez*, 563 F.3d at 963, 966. Assuming Plaintiffs could attain class certification outside this Settlement, there is no guarantee they could maintain it, as a "district court may decertify a class at any time." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). Rivera strongly believes his case would be certified on the basis that there were company-wide policies that affected a large spectrum of employees. (Mot. 8.). Marriott contends that each Class Member's case would require highly individualized analysis and the individual issues would predominate over common facts/issues. (Mot. 8.) Additionally, if the Settlement Agreement is rejected and the Motion denied, Marriott has carved out a clause in the Settlement Agreement stating they will oppose class certification. (Settlement Agreement § 5.) As such, this factor also favors final approval.

### 6. Experience of Class Counsel

The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Class Counsel has experience serving as plaintiffs' counsel in in complex litigation, consumer rights, and other class action litigation. (Second Carney Decl. ¶¶ 5, 9, 15.) Class Counsel also has endorsed the settlement as fair and reasonable, highlighting that the "tremendous effort" spent on the case ultimately yielded a settlement and "excellent result" for the class. (*Id.* ¶¶ 8, 17, 35.) Thus, this factor favors final approval.

### 8. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re*

*Omnivision*, 559 F. Supp. 2d at 1043 (citing *Nat'l Rural*, 221 F.R.D. at 528–29). The Parties did not receive a single class member objection or opt-out to the Settlement. (Mot. 5.) The full participation and absence of objections indicate the terms of the Settlement are favorable to the Class. Accordingly, this factor weighs in favor of granting final approval.

On balance, these five factors weigh in favor of approving the settlement. The remaining three factors are either inapplicable or neutral and are outweighed by the above five factors.

### C. Conclusion as to Final Approval of the Settlement.

Having considered the above factors, the Court finds that the proposed Settlement is fair, reasonable and adequate. Accordingly, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement

### V. MOTION FOR FEES, COSTS AND INCENTIVE AWARD

Plaintiffs move for $125,000.00 in attorneys' fees (calculated as 33.33% of the original Settlement Fund ($375,000.00)), $12,147.84 in litigation costs, $22,250.00 in administrative expenses, and a $7,500.00 Service Payment to Rivera. (*See* Mot. 2–5; Second Carney Decl. ¶¶ 7, 12, 19–20).

### A. Attorneys' Fees

Class Counsel seeks 33.33% of the original Settlement Fund ($375,000.00), which totals $125,000.00. While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citation omitted). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Court chooses to employ a percentage-of-recovery

method.

"Because the benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a *reasonable* fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (emphasis added). The Ninth Circuit has identified a number of factors that a court may consider in assessing whether an award is reasonable, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the financial burden carried by the plaintiff. *Vizcaino*, 290 F.3d at 1048–50. Many of these factors overlap with the factors in the fairness analysis above.

The first factor considers the results achieved. *Id.* at 1048. "Exceptional results are a relevant circumstance." *Id.* Class Counsel contends it achieved an "excellent result" in this case such that 499 class members will receive "a substantial portion of the total settlement." (Second Carney Decl. ¶ 35; Mot. 20–21). Class Counsel overstates the "substantial portion of the total settlement" as each Class Member, on average, will only receive approximately $517.15 in settlement compensation. (Mot. 2.) Although it is significant that Class Members will receive a monetary award, Counsel offers little to establish that this result comes anywhere close to "exceptional." *See Vizcaino*, 290 F.3d at 1048. Accordingly, the Court finds this factor does not support an upward departure from the benchmark award of 25%.

The second factor considers the complexity or risk involved in the litigation. *Vizcaino*, 290 F.3d at 1048. On the one hand, as discussed above, the legal issues involved were relatively straightforward and standard to California-based wage-and-hour class action lawsuits. There is little complexity in the legal allegations

involved in this case. On the other hand, Class Counsel operates entirely on contingency and there *is* a heightened risk involved in that business practice. (Mot. 21.) As Class Counsel accurately points out, there is "no certainty that the class will be certified . . . , that the Plaintiff will prevail on the merits . . . , [or] that the amount of overtime which can be established justifies the time and costs." (Mot. 21.) Under such circumstances, bringing those claims could be viewed as foolhardy rather than tenacious. As this factor cuts both ways, the Court finds it *does* slightly support a departure from the 25% benchmark.

The third factor considers the skill required and quality of work. *See Vizcaino*, 290 F.3d at 1049. Class Counsel's skill and experience with employment class action litigation undoubtedly benefitted the Class here, achieving a settlement and Class payout. However, the Ninth Circuit has discussed this factor as considering whether counsel's performance "generated benefits beyond the cash settlement fund." *Vizcaino*, 290 F.3d at 1049. Class Counsel points to no "incidental or non-monetary benefits conferred by the litigation." *Id.*; (Mot. 21–22.) And while Class Counsel may have artfully negotiated this settlement, the "generated benefit" does not appear to extend "beyond the cash settlement fund." *See Vizcaino*, 290 F.3d at 1049. On balance, the Court finds this factor does not support a departure from the 25% benchmark.

The final factor considers the financial burden carried by the plaintiff. *Id.* at 1049–50. "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013); *see also Vizcaino*, 290 F.3d at 1050 (finding contingent nature of representation a relevant circumstance). Class Counsel litigated this case on contingency and bore the risk of no recovery for almost five years. (Mot. 21; Second Carney Decl. ¶¶ 12, 13.) As such, the Court finds this factor supports an upward departure.

|   |   |
|---|---|
| 1 | The above analysis demonstrates that Counsel's requested 33.33% of the |
| 2 | original Settlement Fund ($375,000.00) is not warranted here, particularly |
| 3 | considering that such an award would further reduce the cash settlement fund |
| 4 | available to the individual Class Members. However, in light of the inherent risk |
| 5 | involved with contingency representation and because Class Counsel has been |
| 6 | diligently litigating this case at its own expense for nearly five years, a modest |
| 7 | upward departure from 25% ($93,750.00) of the original Settlement Fund |
| 8 | ($375,000.00) is supported. In light of the above factors, the Court **APPROVES** |
| 9 | 25% of the new Settlement Fund ($436,560.00), or $109,140.00 in attorneys' fees. |
| 10 | **B.    Litigation Costs** |
| 11 | Class Counsel seek reimbursement of $12,147.84 in expenses incurred in |
| 12 | connection with this lawsuit. (Mot 4; Second Carney Decl. ¶ 12.) Class Counsel's |
| 13 | litigation costs generally appear reasonable in relation to the settlement amount, and |
| 14 | include fees related to research, postage, copying documents, filings, travel |
| 15 | (accommodation, transport, and meals), mediation and other litigation-related fees. |
| 16 | (Second Carney Decl. Exs. 8– 11.) The reasonableness of the costs is also |
| 17 | supported by the fact that the Notice to class members stated that Class Counsel is |
| 18 | seeking reimbursement for "litigation costs," and no class members objected. |
| 19 | (Notice 7.) However, the Notice is not exact and only specifies the maximum cap |
| 20 | amount of costs for reimbursement ($20,000), which may diminish the Notice's |
| 21 | significance. Nevertheless, the requested litigation costs are generally reasonable. |
| 22 | Accordingly, the Court **APPROVES** the requested reimbursement for $12,147.84 |
| 23 | in litigation costs. |
| 24 | **C.    Administrative Expenses** |
| 25 | Class Counsel requests Marriott reimburse two separate administrative |
| 26 | expenses related to litigation. The administrative costs are twofold: (1) payment of |
| 27 | $11,250.00 to LWDA allocated in the PAGA portion of the Settlement Agreement; |
| 28 | and (2) payment of $11,000.00 in administrative expenses to ILYM Group, Inc. |

incurred in connection with its duties as the appointed Claims Administrator of this settlement. (Mot. 4, 25.) These fees generally appear reasonable in relation to the settlement amount and are related to the nature of the class action suit and administrative fees related to settlement. Both parties have agreed to the above payout amounts. Accordingly, the Court **APPROVES** the requested reimbursement and payment of $11,250.00 to LWDA and $11,000.00 to ILYM Group.

### D. Class Representative Service Payment

Class Counsel request a Class Representative Service Payment of $7,500.00 for Plaintiff Rivera. (Mot. 3.) Incentive awards are discretionary but "fairly typical." *Rodriguez*, 563 F.3d at 958. "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable." *Bravo v. Gale Triangle, Inc.*, No. 2:16-cv-03347-BRO (GJXx), 2017 WL 708766, at *18 (C.D. Cal. Feb. 16, 2017). Rivera assumed considerable reputational risk by bringing suit and has interacted with Class Counsel for nearly five years litigating this case. (Mot. 3.) While these standard litigation activities do not *typically* justify an increased award, nearly *five years* of litigation and reputational risk deem it appropriate for an increased incentive award. *See Rodriguez*, 563 F.3d at 958–59 (discussing that the typical incentive award is intended to compensate class representatives for work done on behalf of the class and make up for risk undertaken in bringing the action). As such, the Court **APPROVES** a presumed reasonable service payment of $7,500.00 to Rivera.

### VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Final Approval of Class Settlement and Attorneys' Fees, Costs, and Incentive Awards (ECF No. 97). The Court approves: (1) $109,140.00 for attorney fees to Class Counsel; (2) $12,147.84 for litigation costs to Class Counsel; and (3) $7,500.00 for a service payment to the class representative.

The entire action and all claims asserted therein are hereby **DISMISSED WITH PREJUDICE** and all dates and deadlines in this action are **VACATED** and taken off calendar.

**IT IS SO ORDERED.**

Dated: June 4, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**